IN THE COUNTY COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR MANATEE COUNTY, FLORIDA
SMALL CLAIMS DIVISION

LEURIE ALLEN-STUBER,

    Plaintiff,

v.                                Case No.: 2017SC000290AX

NPAS, INC. and HCA HEALTH SERVICES
OF FLORIDA, INC. D/B/A BLAKE
MEDICAL CENTER,

    Defendants.
_____/

## AMENDED COMPLAINT and DEMAND FOR JURY TRIAL

### I. INTRODUCTION

1. This is an action for damages brought by Plaintiff, LEURIE ALLEN-STUBER, an individual consumer against the Defendants, NPAS, INC. and HCA HEALTH SERVICES OF FLORIDA, INC. D/B/A BLAKE MEDICAL CENTER, for violation of the Florida Consumer Collection Practices Act, §559.72, et seq., Fla. St. (hereinafter referred to as "FCCPA") and the Federal Debt Collection Practices Act, 15 U.S.C. §1692, et seq., (hereinafter referred to as "FDCPA") which both prohibit collectors of consumer debt from engaging in abusive, deceptive, and unfair debt collection practices.

### II. JURISDICTION AND VENUE

2. This is a complaint for damages, which is more than $500.00, but does not exceed $2,500.00 exclusive of costs, interest, and attorney's fees.

3. Venue in this county is proper as the conduct complained of occurred in Bradenton, Manatee County, Florida and is in compliance with §559.77(1), Fla. St. and with 15 U.S.C. §1692k(d).

4. This Court has subject matter jurisdiction over the allegations herein pursuant to §34.01(1)(c), Fla. St. and 15 U.S.C. §1692k(d).

5. This Court has personal jurisdiction over Defendant, HCA HEALTH SERVICES OF FLORIDA, INC. D/B/A BLAKE MEDICAL CENTER, as they are a medical provider doing business in the State of Florida and the transaction which led to the alleged debt as described herein occurred in the State of Florida.

6. This Court has personal jurisdiction over Defendant, NPAS, INC., as they are a debt collector registered to collect consumer debts in the State of Florida, and, at all times material to the allegations herein, was attempting to collect a debt from Plaintiff, a resident of the State of Florida.

### III.
### PARTIES

7. Plaintiff, LEURIE ALLEN-STUBER, is a natural person residing in Bradenton, Manatee County, Florida (hereinafter referred to as "Plaintiff"). Plaintiff is a "consumer" as that term is defined by §559.55(8), Fla. St.

8. Defendant, HCA HEALTH SERVICES OF FLORIDA, INC. D/B/A BLAKE MEDICAL CENTER, (hereinafter referred to as "Creditor") is a company with principal place of business in Tennessee, but registered and doing business as a medical provider in the State of Florida, and under the circumstances noted and identified below is a "creditor" as that term is defined by §559.55(5), Fla. St. and 15 U.S.C. §1692a(4).

9. Defendant, NPAS, INC., (hereinafter referred to as "Collector") is a company with principal place of business in Tennessee, but registered and doing business as a debt collector in the State of Florida, and under the circumstances noted and identified below is a "debt collector" as that term is defined by §559.55(7), Fla. St., and 15 U.S.C. §1692a(6).

10. At all times material to the allegations of this complaint, Defendants were acting as collectors of a debt with respect to the collection of Plaintiff's alleged consumer debt.

## IV.
## FACTUAL ALLEGATIONS

11. Upon information and belief, Defendants have sought to collect an alleged consumer debt from Plaintiff arising from medical care, treatment, and services which were performed by Creditor upon Plaintiff, and is a "debt" as that term is defined by §559.55(6), Fla. St. and by 15 U.S.C. §1692a(5).

12. Plaintiff suffered an industrial accident arising out of and in the course and scope of Plaintiff's employment with The Hungry Parrot in the State of Florida on March 30, 2016. As such, Plaintiff is entitled to receive workers' compensation benefits pursuant to Chapter 440, Fla. St., including but not limited to medical care and treatment. See §440.13, Fla. St. The identified workers' compensation insurance carrier is Summit (hereinafter referred to as "Carrier"). The adjuster assigned to Plaintiff's claim by Carrier is Christy Jaeger, and the carrier's file number assigned to Plaintiff's claim is 99667.

13. Plaintiff received emergency services and care, as defined by §395.002(9), Fla. St., from Creditor on March 30, 2016, for injuries caused by Plaintiff's March 30, 2016 date of accident.

14. Creditor is a health care provider, as defined by §440.13(1)(g), Fla. St.

15. §440.13(3)(b), Fla. St., states that emergency care is compensable in a workers' compensation claim if the care was provided for an injury arising as a result of a work-related

9. Defendant, NPAS, INC., (hereinafter referred to as "Collector") is a company with principal place of business in Tennessee, but registered and doing business as a debt collector in the State of Florida, and under the circumstances noted and identified below is a "debt collector" as that term is defined by §559.55(7), Fla. St., and 15 U.S.C. §1692a(6).

10. At all times material to the allegations of this complaint, Defendants were acting as collectors of a debt with respect to the collection of Plaintiff's alleged consumer debt.

## IV.
## FACTUAL ALLEGATIONS

11. Upon information and belief, Defendants have sought to collect an alleged consumer debt from Plaintiff arising from medical care, treatment, and services which were performed by Creditor upon Plaintiff, and is a "debt" as that term is defined by §559.55(6), Fla. St. and by 15 U.S.C. §1692a(5).

12. Plaintiff suffered an industrial accident arising out of and in the course and scope of Plaintiff's employment with The Hungry Parrot in the State of Florida on March 30, 2016. As such, Plaintiff is entitled to receive workers' compensation benefits pursuant to Chapter 440, Fla. St., including but not limited to medical care and treatment. See §440.13, Fla. St. The identified workers' compensation insurance carrier is Summit (hereinafter referred to as "Carrier"). The adjuster assigned to Plaintiff's claim by Carrier is Christy Jaeger, and the carrier's file number assigned to Plaintiff's claim is 99667.

13. Plaintiff received emergency services and care, as defined by §395.002(9), Fla. St., from Creditor on March 30, 2016, for injuries caused by Plaintiff's March 30, 2016 date of accident.

14. Creditor is a health care provider, as defined by §440.13(1)(g), Fla. St.

15. §440.13(3)(b), Fla. St., states that emergency care is compensable in a workers' compensation claim if the care was provided for an injury arising as a result of a work-related

*Amended Complaint and*
*Jury Trial Demand*
*Page 3 of 12*

accident. Additionally it requires that a health care provider who renders emergency care to notify the injured workers' workers' compensation insurance carrier by the close of the third business day after it has rendered such care, or if the emergency care results in admission of the employee to a health care facility, the health care provider must notify the carrier by telephone within 24 hours after initial treatment.

16. §440.13(13), Fla. St., directs the statutory standards for payment of fees which are associated with the medical care and treatment received by the injured worker, and specifically states:

> (a)  Except for emergency care treatment, fees for medical services are payable only to a health care provider authorized to render remedial treatment, care, or attendance under this chapter. Carriers shall pay, disallow, or deny payment to health care providers in the manner and at times set forth in this chapter. **A health care provider may not collect or receive a fee from an injured employee within this state**, except as otherwise provided by this chapter. **Such providers have recourse against the employer or carrier for payment for services rendered in accordance with this chapter. Payment to health care providers or physicians shall be subject to the medical fee schedule and applicable practice parameters and protocols**, regardless of whether the health care provider or claimant is asserting that the payment should be made.
> (emphasis added)
>
> (b)  Fees charged for remedial treatment, care, and attendance, except for independent medical examinations and consensus independent medical examinations, may not exceed the applicable fee schedules adopted under this chapter and department rule. Notwithstanding any other provision in this chapter, if a physician or health care provider specifically agrees in writing to follow identified procedures aimed at providing quality medical care to injured workers at reasonable costs, deviations from established fee schedules shall be permitted. Written agreements warranting deviations may include, but are not limited to, the timely scheduling of appointments for injured workers, participating in return-to-work programs with injured workers' employers, expediting the reporting of treatments provided to injured workers, and agreeing to continuing education, utilization review, quality assurance, precertification, and case management systems that are designed to provide needed treatment for injured workers.

17. On or about May 6, 2016, in Manatee County, Florida, Plaintiff received a statement from Creditor seeking to collect a debt from Plaintiff which was for emergency services and care

received by Plaintiff from Creditor while at Blake Medical Center on March 30, 2016. A copy of the statement is attached as Exhibit "A".

18. On or about May 28, 2016, June 28, 2016, and July 30, 2016 in Manatee County, Florida, Plaintiff received statements from Collector seeking to collect a debt from Plaintiff which was for emergency services and care received by Plaintiff from Creditor while at Blake Medical Center on March 30, 2016. Copies of the statements are attached as Exhibit "B".

19. The debt Defendants have sought to collect from Plaintiff is by statute improper and is not a legitimate debt of Plaintiff. Plaintiff is not liable per statute for payment for the medical care and treatment which was provided by Creditor to Plaintiff as part of Plaintiff's workers' compensation claim. See §440.13(3)(g), Fla. St.; *Bergstein v. Palm Beach County School Board*, 97 So. 3d 878 (Fla. 1st DCA 2012); *Bryan LGH Medical Center v. Florida Beauty Flora, Inc.*, 36 So. 3d 795 (Fla. 1st DCA 2010); *Avalon Center v. Hardaway*, 967 So. 2d 28 (Fla. 1st DCA 2007).

20. Florida's workers' compensation system is designed to be a self-executing system which provides benefits to injured workers without placing undue financial burdens on those workers. Chapter 440, Fla. St., provides for employers a liability that is limited and determinative and to employees a remedy that is both expeditious and independent of proof of fault. Additionally it assures the prompt delivery of benefits to injured workers. It is meant to be an "efficient and self—executing system which is not an economic or administrative burden". See §440.15, Fla. St.; *Florida Erection Services, Inc. v. McDonald*, 395 So.2d 203, 209 (Fla. 1st DCA 1981); *Humana of Florida v. McKaughan*, 652 So.2d 852, 857 (Fla. 2nd DCA 1995).

21. When Plaintiff presented to Blake Medical Center for emergency services and care she informed the facility during the admissions process that the injuries Plaintiff was seeking treatment

*Amended Complaint and*
*Jury Trial Demand*
*Page 5 of 12*

for were caused by a work-related accident. Additionally Plaintiff explained how the accident happened to her treating physician.

22. Creditor had actual knowledge that the amount it willfully sought to collect from Plaintiff was improper through the information provided by Plaintiff and Plaintiff is under information and belief that the amount sought to be collected by Defendants from Plaintiff is excessive in violation of the workers' compensation statutory fee schedule. See *Southern Bakeries v. Cooper, 659 So. 2d 339* (Fla. 1st DCA 1995) (discussing that in the absence of an express statutory provision the injured worker is not obligated to pay for medical services).

23. On information and belief, Creditor either provided this same knowledge to Collector, or withheld it for the purposes of attempting to collect the alleged debt. However it is well established that a creditor cannot withhold such information for the purposes of contravening the intent of the FDCPA or FCCPA. "Knowledge can be imputed to the debt collector when the creditor has such knowledge and fails to convey it to its agent, the debt collector, at the time it seeks collection." See *Powers v. Prof'l Credit Servs., Inc.,* 107 F.Supp.2d 166, 169 (N.D.N.Y.2000)

24. As such, Collector either knew, or had that knowledge imputed to itself, that Plaintiff did not owe the alleged consumer debt.

25. Despite Collector having such knowledge, the FDCPA is considered a strict liability statute wherein knowledge is used only to determine the degree of a defendant's culpability, for the purposes of computing damages. See *Russell v. Equifax ARS*, 74 F. 3d 30, 33 (2d Cir. 1996)

26. Defendants would have had as a reference the website of the Florida Department of Financial Services, Division of Workers' Compensation, more specifically: http://www.myfloridacfo.com/division/wc, see section noted as Frequently Asked Questions,

point titled: Medical, Medical Provider, Managed Care Arrangement, in which the following question and answer is provided:

> **Question:** What are the consequences for non-compliance with established administrative rules and policies?
>
> **Answer:** The Division may impose administrative penalties and sanctions pursuant to subsections 440.13(8) and (11), F.S. for violations of Chapter 440, F.S. and applicable rules. These actions may include but are not limited to:
>
> An order of the department barring the provider from payment under this chapter;
> - Deauthorization of care under review;
> - Denial of payment for care rendered in the future;
> - Decertification of a health care provider certified as an expert medical advisor under subsection (9)
> - An administrative fine assessed by the department in an amount not to exceed $5,000 per instance of overutilization or violation;
> - Notification of and review by the appropriate licensing authority pursuant to s. 440.106(3), F.S.

27. Violations of Chapter 440, Fla. St., are defined by Chapter 69L-34, F.A.C., titled "Carrier Report of Health Care Provider Violations". As defined by 69L-34.001(6), F.A.C., one such violation occurs when a provider collects or receives payment from an injured worker in violation of §440.13(13)(a), Fla. St.

28. Defendants would have had as reference 69L-7.710, F.A.C, titled "Florida Workers' Compensation Medical Services Billing, Filing, and Reporting Rule", which explains in detail the procedures and requirements for medical providers to receive payment (from the workers' compensation insurance carrier, not the injured worker in question) for medical services rendered to injured workers in the state of Florida.

29. Defendants would also have had as reference the Florida Workers' Compensation Health Care Provider Reimbursement Manual, published by the State of Florida Division of Workers' Compensation, which also explains in detail the procedures and requirements for medical

providers to receive payment (from the workers' compensation insurance carrier, not the injured worker in question) for medical services rendered to injured workers in the state of Florida, as well as containing the statutory fee schedule for workers' compensation claims in Florida.

30. Defendants intentionally, willfully, and with full malice harassed, annoyed, and otherwise tried to cause Plaintiff to do something contrary to Plaintiff's interest, such as to pay the alleged consumer debt. This misconduct on the part of the Defendants has been, and continues to be, very distressing and upsetting to Plaintiff.

31. The above, noted willful collection activity by Defendants, in billing Plaintiff for payment for medical care and treatment, is in direct violation of and prohibited by §440.13(13), Fla. St., and the FCCPA.

32. Defendants' illegal abusive collection activity as more fully described above was the direct and proximate cause of emotional distress sustained by Plaintiff and has caused Plaintiff unnecessary distress.

33. Plaintiff has suffered actual damages in the form of anger, anxiety, emotional distress, frustration, upset, amongst other negative emotions, due to and as a result of the illegal collection activity by Defendants as more fully described above.

## V.
## RESPONDENT SUPERIOR LIABILITY

34. The acts and omissions of Defendants' agents who initiated the collection activity with Plaintiff as more further described herein, were committed within the line and scope of their agency relationship with their respective principals.

35. The acts and omissions by these debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by their respective principals in collecting consumer debts.

*Amended Complaint and*
*Jury Trial Demand*
*Page 8 of 12*

36. By committing these acts and omissions against Plaintiff, these Defendants' debt collectors were motivated to benefit their respective principals.

37. Defendants are therefore liable to Plaintiff through the doctrine of Respondent Superior for the wrongful, intentional, reckless, and negligent acts, errors, and omissions done in violation of state law by their collection employees, including but not limited to violation of the FCCPA and the FDCPA, in their attempts to collect the debt identified herein.

## VI.
## NOTICE OF ATTORNEY'S FEES AND COSTS

38. Plaintiff, by and through the undersigned attorney, files this Notice of Attorney's Fees and Costs, as Plaintiff would state: Plaintiff has retained the law firm of Kobal Law, P.A. in this matter and has agreed to compensate said law firm for such services. Plaintiff would request that Defendants be assessed her attorney's fees and costs in this matter pursuant to §559.77, Fla. St. and 15 U.S.C §1692k(a)(3).

## COUNT I
## VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT

39. Plaintiff incorporates Paragraphs 1 through 38.

40. The acts and omissions of Creditor and its employees and agents as outlined herein constitute a violation of the FCCPA with respect to Plaintiff.

41. This direct written contact in the form of a statement sent by Creditor demanding payment from Plaintiff constitutes a "communication" as defined by §559.55(2), Fla. St.

42. Creditor and its employees and agents violated the State of Florida Consumer Collection Practices Act, §559.72(9), Fla. St., by attempting to collect a debt from Plaintiff when Creditor knew that Plaintiff did not owe that debt pursuant to statute.

43. Creditor and its employees and agents violated the State of Florida Consumer Collection Practices Act, §559.72(5), by transferring the alleged debt to Collector for the purposes of attempting to collect the alleged debt from Plaintiff when Creditor knew Plaintiff did not owe that debt.

44. Creditor and its employees and agent's acts as described above, were done with actual knowledge and intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

45. As a result of the above violation of the State of Florida Consumer Collection Practices Act, Creditor is liable to Plaintiff for injunctive and declaratory relief and for actual damages, statutory damages, and attorney's fees and costs.

## COUNT II
## VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT

46. Plaintiff incorporates Paragraphs 1 through 38.

47. The acts and omissions of Collector and its employees and agents as outlined herein constitute a violation of the FCCPA with respect to Plaintiff.

48. This direct written contact in the form of statements sent by Collector demanding payment from Plaintiff constitutes a "communication" as defined by §559.55(2), Fla. St.

49. Collector and its employees and agents violated the State of Florida Consumer Collection Practices Act, §559.72(9), Fla. St., by attempting to collect a debt from Plaintiff when Collector knew that Plaintiff did not owe that debt pursuant to statute.

50. Collector and its employees and agent's acts as described above, were done with knowledge and intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

51. As a result of the above violation of the State of Florida Consumer Collection Practices Act, Collector is liable to Plaintiff for injunctive and declaratory relief and for actual damages, statutory damages, and attorney's fees and costs.

## COUNT III
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

52. Plaintiff incorporates Paragraphs 1 through 38.

53. The acts and omissions of Collector and its employees and agents as outlined herein constitute a violation of the FDCPA with respect to Plaintiff.

54. This direct written contact in the form of statements sent by Collector demanding payment from Plaintiff constitutes a "communication" as defined by 15 U.S.C. §1692a(2).

55. Collector and its employees and agents violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692f(1) by attempting to collect a debt from Plaintiff when that debt was not permitted by law, specifically §440.13, Fla. St.

56. Collector and its employees and agents violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692e(2)(A) by falsely representing that Plaintiff owes the alleged debt when in fact Plaintiff does not.

57. Collector and its employees and agent's acts as described above, were done with knowledge and intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

58. As a result of the above violation of Fair Debt Collection Practices Act, Collector is liable to Plaintiff for injunctive and declaratory relief and for actual damages, statutory damages, and attorney's fees and costs.

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendants' conduct violated the FCCPA, and declaratory and injunctive relief for Defendants' violation of the FCCPA;

B. Declaratory judgment that Collector's conduct violated the FDCPA, and declaratory and injunctive relief for Collector's violation of the FDCPA;

C. Actual damages pursuant to §559.77, Florida Statutes and 15 U.S.C. §1692k(a)(1);

D. Statutory damages pursuant to §559.77, Florida Statutes and 15 U.S.C §1692k(a)(2)(A);

E. Costs and reasonable attorney's fees pursuant to §559.77, Florida Statutes and 15 U.S.C §1692k(a)(3);

F. For such other and further relief as may be just and proper.

## VIII.
## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands trial by jury in this action.

Respectfully submitted this 6th day of April, 2017

/s/ *Jason R. Kobal*
JASON R. KOBAL, ESQ.
KOBAL LAW, P.A.
12169 W. Linebaugh Ave.
Tampa, FL 33626
813-873-2440
koballaw@yahoo.com
Florida Bar No.: 0542253
Attorney for Plaintiff

*Amended Complaint and*

*Jury Trial Demand*

*Page 12 of 12*